VÍCTOR EMMANUELLI, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondent; DEPARTMENT OF THE INSULAR POLICE, Employer.

No. 397. Argued January 10, 1949.—Decided April 21, 1949.

*Luis A. Archilla Laugier* for petitioner. *Angel de Jesús Matos, M. Maldonado Pacheco,* and *Aída Casañas Marengo* for the State Fund.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

The Manager of the State Insurance Fund denied compensation to Víctor Emmanuelli, First Lieutenant of the Insular Police, for a fall sustained by him on July 23, 1947, while on duty in the city of Bayamón. The injury occurred when Emmanuelli, while stepping unto the sidewalk in Maceo Street, slipped and fell backwards against an electric light

post. Emmanuelli appealed to the Industrial Commission and the latter, after a hearing on the merits, dismissed the appeal on the ground that there was involved an ordinary street risk and that in such circumstances the accident was not compensable. It applied to the case the decision of this Court in *Ríos* v. *Industrial Commission*, 66 P.R.R. 385.

Reconsideration was denied and Emmanuelli applied to this Court for a writ of review.

■ The uncontroverted facts, as summarized by the Industrial Commission in the decision appealed from are as follows:

"From all the evidence introduced, it was proved beyond any doubt that on July 23, 1947, between 11:00 and 11:30 A.M., petitioner, acting as Chief of the Insular Police of Bayamón in the absence of his superior, left headquarters to inspect the policemen who were on active duty that day in the town; that while walking on the street towards the corner of Oller Street to inspect the policemen on duty there and while passing by the district court, he stopped to talk with Angelino Rivera and to answer certain questions asked by the latter in connection with the transfer of Rivera to said town; that upon continuing on his way to the spot he was going to inspect, he tripped against the curb of the sidewalk and fell backwards against an electric light post, sustaining injuries thereby; that he was taken to the clinic of Dr. Meléndez in Bayamón, and that the accident occurred precisely when he stepped with his left foot into the sidewalk to continue on his way."

Subsequently, it reached the following conclusions:

"In our judgment, in accordance with all the evidence introduced and pursuant to the prevailing decisions in cases similar to the present one, we have to reach the conclusion that we deal here with an ordinary street risk in which there does not exist any circumstance to take the case out of the general rule applicable to these cases in order that compensation be allowed.

"Our highest tribunal recently made a complete study of the interpretation of the law and the decisions in these cases (see *Ríos* v. *Industrial Commission*, 66 P.R.R. 385), and the same decisions applied to the *Ríos* case should be applied to the case

at bar, for which reasons, the appeal is dismissed and the decision of the Manager of the State Insurance Fund of November 12, 1947, is sustained in each and every one of its parts."

Therefore, in accordance with the facts as summarized by the respondent Commission, there is no controversy as to the fact that Emmanuelli was acting in the capacity of Chief of the Insular Police of Bayamón on July 23, 1947, in the absence of his superior, and that he left headquarters between 11:00 and 11:30 A. M. in the discharge of the duties of his position; that is, to inspect the policemen on duty that day in the town. Under such circumstances, as Emmanuelli was in the course of his employment when he fell, the case of *Ríos* v. *Industrial Commission, supra,*[1] cited by the respondent Commission in support of its findings is not in point. *Malavé* v. *Industrial Commission,* 69 P.R.R. 61, 65.

██ In order to determine the *ratio decidendi* of a case, the facts which serve as basis of the decision should be examined. *Echeandía* v. *Saldaña,* 61 P.R.R. 771, 775. The facts in the *Ríos* case show that the case involved an accident which occurred when Chief Ríos left his home and was trying to cross a ditch between the gate of his house and the street, in order to enter an automobile which was to take him to police headquarters at Fajardo. His work had not commenced. When this Court affirmed the decision of the Industrial Commission denying compensation, it applied the rule followed in *Pérez* v. *Industrial Commission,* 53 *D.P.R.*

---

[1] For the same reasons, *Pérez* v. *Industrial Commission (Per curiam)* and *Guillot* v. *Industrial Commission,* cited in the *Ríos* case and in the text of this opinion are not applicable either. The *Pérez* case dealt with a school teacher who slipped on the pavement upon boarding a bus in front of her home to go to work. Compensation was denied her. The *Guillot* case dealt with a workman in a sugar cane plantation who, after finishing work at 4:30 in the afternoon, washing and changing into his street clothes, got on his bicycle, which he used as a means of transportation from his home to his place of employment and was run over by an automobile while he was riding on the bicycle over the public highway leading from Ponce to Guayama on his way home. Compensation was also denied.

960 (*Per curiam*) and *Guillot* v. *Industrial Commission*, 60 P.R.R. 658, to the effect that "in the absence of exceptional circumstances, accidents sustained on public highways *while going to or from work* are not compensable." . (Italics ours.) In the case at bar, Emmanuelli *was already* engaged in his work and was going from headquarters to the place where he was to start the inspection of the policemen under his command. The rule, therefore, to determine the compensability of the accident sustained by him, is not that covering accidents which occur on a public highway *while going to or from work*, with its exceptions,[2] but that which covers accidents occurring on the public highway while in the course of work or employment. as it prevails today in the majority of the jurisdictions.

■■ The doctrine of "street risks" was applied in the United States when some of the courts adopted the view that accidents sustained due to risks shared by the community at large were not compensable, since said risks were not peculiar to the employment.[3] But even under this view, if the work required the employee to be *constantly* in the street, he was considered as being exposed to such risks in a greater degree, and in such accidents compensation was allowed.[4] This doctrine, however, has been discarded in almost all jurisdictions, where there prevails today the rule that when in an employment a person is exposed to ordinary street risks,

---

[2] *Atiles, Mgr.* v. *Industrial Commission*, 64 P.R.R. 590; *Atiles, Mgr.* v. *Industrial Commission*, 63 P.R.R. 774; in which we stated that "*going to and from* work, under ordinary circumstances, is not activity *within the scope of employment* . . ." (Italics ours); *Cordero, Mgr.* v. *Industrial Commission*, 60 P.R.R. 851.

[3] *Hewitt's* case (1916) 225 Mass. 1, 113 N. E. 572; *Donahue's* case (1917) 226 Mass. 595, 116 N.E. 226; *Colarullos's* case (1927) 258 Mass. 521, 155 N.E. 425 (revoking *Cook's* case (1923) 243 Mass. 572, 137 N.E. 733, where the view had been adopted that an accident was compensable if the "street risk" was incidental to the employment) and cases cited in the annotation of 51 A.L.R., pp. 511 and 512. See annotations in 80 A.L.R. 126 and 139 A.L.R. 1472.

[4] *Keany's* case (1919) 232 Mass. 532, 132 N.E. 739; *Moran's* case (1920) 234 Mass. 566, 125 N.E. 591; see annotations cited in note (3).

even if only occasionally, an accident arising in the course thereof is compensable.[5]

To illustrate better the application of this rule to the present case we have cited in footnote 5, *supra*, from among the many decisions to that effect, cases of accidents suffered in the street by *reason of falls*. *Locke* v. *Steele County* (1947) 223 Minn, 464, 27 N. W. (2d) 285, dealt with a stenographer who worked in the office of the Steele County Superintendent of Schools, in Minnesota, for a salary of $70 a month. As part of her duties she had to go to the post office each noon for the mail. On a certain occasion, while going to the post office to comply with such duties, she slipped on the ice and fell, receiving several injuries. The Supreme Court of Minnesota held that the accident occurred in the course of her employment and followed the rule that when the scope of employment requires that an employee use the street to perform his duties, accidents that occur in the course of said employment and that arise from ordinary street risks are compensable even though other persons not so employed are subject to the same risks.

In *New Amsterdam Casualty Co.* v. *Hoage* (1932, App. D.C.) 62 Fed. 2d 468, certiorari denied in 288 U. S. 608, 77 L. ed. 982, a newspaper agent who worked for the Washington Post Company fell while crossing a public street in the city of Washington, fractured his skull and died a few days later. Besides deciding several matters which we do not need to discuss, the Court of Appeals of the District of Columbia expressed itself thus: "We are of the opinion that the facts as disclosed by the record are sufficient to sustain

---

[5] *Locke* v. *Steele County* (1947) 223 Minn. 464, 27 N. W. (2d) 285; *New Amsterdam Casualty Co.* v. *Hoage* (1932 App. D.C.) 62 Fed. (2d) 468, certiorari denied in 288 U. S. 608, 77 L. ed. 982; *Central Surety & Ins. Corp.* v. *Court* (1931) 162 Tenn. 477, 36 S.W. (2d) 907; *Johnston* v. *W. S. Nott Co.* (1931) 183 Minn. 309, 236 N. W. 466; *Wilber* v. *Fonda* (1924) 208 App. Div. 249, 203 N. Y. Supp. 336; *Schroeder & D. Co.* v. *Ind. Comm.* (1919) 169 Wis. 567, 173 N. W. 328; *Redner* v. *H. C. Faber & Son* (1918) 223 N. Y. 379, 119 N. E. 842; Horovitz, Workmen's Compensation, pp. 96 *et seq.* See also the annotations cited in note (3).

the decision of the deputy commissioner. It is conceded that at the time of the accident Brosnan was acting in the course of his employment. He was a solicitor for a newspaper and his duties required him to go from place to place within the city. This implied that his travels might properly be made on foot and that he might traverse the sidewalks and the streets of the city in the course of his employment. It follows that Brosnan while so walking upon the city streets was proceeding similarly to a workman walking upon the floor of a factory or workshop. It was therefore the pursuit of Brosnan's employment which placed him in the position in which he suffered the accidental fall resulting in his death.

"In the early administration of compensation laws, the rule was often adopted that injuries occurring upon the public highways due to traffic hazards did not 'arise out of' the workman's employment. This rule was founded upon the theory that such hazards are common to the community at large and are not incident to particular employments, and it was held that the compensation acts were not designed to exempt the employee from such risks. This doctrine, however, has since been abandoned. It is now held by the greater weight of the authorities that, if an employee in the course of his employment has to pass along the public streets and thereby sustains an accident by reason of the risks incident to the streets, the accident 'arises out of' as well as 'in the course of' his employment."

In the case at bar, Chief Emmanuelli was in the course of his employment and the fall sustained by him when going to inspect the policemen who were under his command arose out of such employment. Inasmuch as his employment exposed him to street risks, such risks were incidental to his work. In such circumstances he is entitled to the protection of the law.

The decision appealed from should be reversed and the case remanded to the Industrial Commission for further proceedings not inconsistent with this opinion.