UNITED FIRE & CASUALTY COMPANY, Appellant,

v.

Michael Wade MAW, Defendant,

Kurt Fredrick Merkle, et al., Raymond James Staples, Respondents.

Kurt Fredrick MERKLE, et al., third-party plaintiffs, Respondents,

v.

GENERAL ACCIDENT GROUP, third-party defendant, Respondent.

No. C3–93–1613.

Court of Appeals of Minnesota.

Jan. 4, 1994.

Dean K. Johnson, Johnson & Lindberg, P.A., Minneapolis, for appellant.

David H. Bailly, David H. Bailly, Ltd., Minneapolis, for Kurt Frederick Merkle, et al.

Jackson S. Baehman, Horvei, Gubbe & Krueger, P.A., Roseville, for Raymond James Staples.

Kenneth P. Gleason, James M. Lehman, Mahoney, Dougherty and Mahoney, Minneapolis, for Gen. Acc. Group.

Considered and decided by ANDERSON, C.J., and KALITOWSKI and FLEMING *, JJ.

## OPINION

FLEMING, Judge.

Appellant insurer challenges the district court's conclusion that injuries sustained by an employee of the insured did not arise out of, and in the course of, the employee's employment. We reverse.

## FACTS

Raymond Staples worked as a laborer on one of Greystone Masonry's concrete crews. The foreman of Staples's crew, Bob Orchard, scheduled the order of projects on which the crew worked. The crew usually worked on more than one project per day. Orchard often did not know at the end of one work day what the schedule for the following day would be. Orchard's practice was to go home, determine what the schedule was, call the members of his crew in the evening and tell them to meet at a particular place before 7:00 the following morning. Once all the crew members were gathered at the designated meeting place, they followed Orchard to the first job site of the day.

A crew member who arrived late would not know where the crew was starting that day. If a crew member did not show up on time at the scheduled meeting place, the crew would go to the job site without that crew member and would have to work short-handed. Or-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

chard might go back and check the meeting place for the missing crew member after the other members of the crew got started at the job site, depending on his schedule. A crew member who was consistently late to the meeting place might be fired.

On August 22, 1990, Staples's concrete crew met at a prearranged location, a street corner. Staples arrived before 7:00 a.m. and was standing on or near the curb, waiting for the rest of the crew to arrive. Michael Maw, driving a truck owned by Kurt Merkle, the founder and president of Greystone, arrived at the meeting place shortly after Staples. Maw, who was "goofing around," swerved towards Staples and braked abruptly. When Maw braked, several bundles of rods used to reinforce concrete (rebar or rerods) slid out of tubes on top of the truck. One bundle of six or seven rerods struck Staples in the left leg; one or two other bundles fell on his back, severely injuring him.

Staples sued Maw, Merkle and Greystone. The three defendants sought a defense from appellant United Fire and Casualty Company, the insurer of the truck Maw was driving. United Fire denied coverage, relying on the following exclusions:

> **B. EXCLUSIONS**
>
> This insurance does not apply to any of the following:
>
> * * * * * *
>
> **3. WORKERS COMPENSATION**
>
> Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation disability benefits or unemployment compensation law or any similar law.
>
> **4. EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY**
>
> "Bodily injury" to:
>
> a. An employee of the "insured" arising out of and in the course of employment by the "insured,"
>
> * * * * * *
>
> **5. FELLOW EMPLOYEE**
>
> "Bodily injury" to any fellow employee of the "insured" arising out of and in the course of the fellow employee's employment.

United Fire commenced this declaratory judgment action, seeking a determination that it was not obligated to defend or indemnify Maw, Merkle or Greystone. United Fire and Staples moved for summary judgment. The district court determined that Staples's injuries did not arise out of and in the course of his employment and that United Fire was obligated to defend the action brought by Staples. United Fire then moved for reconsideration or clarification of the order for summary judgment. The district court denied the reconsideration motion, but clarified its prior order by directing that summary judgment be entered in favor of Staples. United Fire has appealed from the judgment.

## ISSUE

When an employee's job requires that he be at a particular place at a particular time, does an injury to the employee at that place and time arise out of and in the course of the employee's employment?

## ANALYSIS

### 1. *Standard of Review*

[redacted] The district court's determination that the United Fire policy did not exclude coverage for Staples's injuries was based on a determination that his injuries did not arise out of and in the course of the employment of Staples or his fellow employees. There is no dispute regarding the relevant facts. Whether Staples's injuries arose out of and in the course of his employment presents a question of law that this court reviews de novo. *See Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985).

United Fire presents three arguments based on the policy language to support its contention that the policy does not provide coverage. First, it argues that the injury arose out of, and in the course of, Staples's employment. Next it argues that Staples's claim is one for which Greystone may be held liable to Staples under a workers' compensation law if Staples's injuries arose out of and in the course of his employment. Finally, it

argues that Staples is a fellow employee of Merkle and Maw and suffered bodily injury that arose out of and in the course of Staples's employment. Resolution of these three arguments requires a determination of whether Staples's injuries arose out of and in the course of his employment.

In addition, United Fire argues that the district court erred in relying on the election of remedies provision of the workers' compensation act and the denial of workers' compensation benefits by Greystone's workers' compensation insurer. Whether United Fire's policy provides coverage must be decided based on the language of the policy, not on whether another insurer has denied coverage for a different claim or whether Staples brings a common law negligence action rather than seek workers' compensation benefits. *See Bobich v. Oja,* 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960) (insurer's liability determined by terms of insurance policy).

### 2. *Arising Out Of and In The Course Of*

■ All employers in Minnesota must pay workers' compensation benefits in every case of personal injury to an employee arising out of, and in the course of, the employee's employment. Minn.Stat. § 176.021, subd. 1 (1990).[1] "Arising out of" and "in the course of" express two different ideas.

> The term "arising out of" * * * refers to the causal connection between the employment and the injury, whereas the term "in the course of" refers to the time, place, and circumstances of the accident causing the injury. * * *
>
> We have held that an injury arises out of the employment if it arises out of the nature, conditions, obligations, or incidents of the employment; in other words, out of the employment looked at in any of its aspects.

*Swenson v. Zacher,* 264 Minn. 203, 207, 118 N.W.2d 786, 789 (1962) (liberal construction cited). The "arising out of" and "in the

course of" tests are not applied independently; they are elements of "a single test of work-connection." Arthur Larson, *Workmen's Compensation for Occupational Injuries & Death* § 29.00 (1993) (hereafter cited as Larson).

#### A. *Arising*

Courts interpreting the "arising" requirement apply three lines of interpretation:

> Most courts in the past have interpreted "arising out of employment" to require a showing that the injury was caused by an increased risk to which claimant, as distinct from the general public, was subjected by his employment. A substantial number have now modified this to accept a showing merely that the risk, even if common to the public, was actually a risk of his employment. *An important and growing group of jurisdictions has adopted the positional-risk test, under which an injury is compensable if it would not have happened but for the fact that the conditions or obligations of the employment put claimant in the position where he was injured.*

Larson, § 6.00 (emphasis added).

When the general public and the employee are equally subject to the injury-causing risk, Minnesota has applied a positional risk test. *See Auman v. Breckenridge Telephone Co.,* 188 Minn. 256, 246 N.W. 889 (1933); *Bookman v. Lyle Culvert & Road Equip. Co.,* 153 Minn. 479, 190 N.W. 984 (1922). In *Bookman,* the court stated:

> [A]n injury to an employee, engaged in his employer's service in a duty calling him upon the street, by what is usually called a street risk to which his work subjects him, arises as a matter of law out of his employment, although others so employed, or the public using the streets, are subject to such risks.

*Id.* at 481, 190 N.W. at 984. In *Bookman,* the employee's duties included taking the mail out to a mailbox. While on her way to

---

1. Whether injuries arise out of, and in the course of, employment for purposes of the workers' compensation act has generated a substantial body of case law. Many of the cases held that the workers' compensation act was a remedial statute that was to be liberally construed in favor of the employee. In 1983, the legislature abolished the liberal construction rule. 1983 Minn. Laws ch. 290, § 25, codified at Minn.Stat. § 176.001 (1990). Where a cited case has relied on or referred to the liberal construction rule, it will be noted parenthetically.

the mailbox, the employee was struck by a car. The *Bookman* court concluded that her injuries arose out of her employment. *Id.,* 190 N.W. at 984.

In *Auman,* by contrast, the employee returned to his office after completing some telephone line work. While walking from his car to his office, he was struck by a bullet from a gun that a boy in a nearby building accidentally fired. The court in *Auman* found the employee's injuries did not arise out of his employment because his duties did not increase the hazard that he would be accidentally shot. The *Auman* court stated:

> [O]ur statute * * * restricts compensation to injuries caused by accidents which "arise out of" the employment. * * * Of an employer who would set a crew of men to work in deer territory during the open season it could readily be found that an injury caused by a stray bullet arose out of the employment. But it is quite different to say that an employment such as was relator's, in an open country district including a small city or village, gives rise to the hazard of injury from the accidental discharge of a gun other or different from what any other person within the same territory must face.

*Auman,* 188 Minn. at 258–59, 246 N.W. at 890; *see also Gibberd by Gibberd v. Control Data Corp.,* 424 N.W.2d 776, 782–83 (Minn. 1988) (employee taking meal break off employer's premises not subject to greater hazard of random violence than anyone else on the street).

■ In this case, Staples was required by his employer to be at the place where his injuries occurred. His employment thus subjected him to the injury-causing risk. Respondents argue that Staples was subject to the same risk of being injured as anyone else on a street corner. But the same could be said of the employee in *Bookman,* whose injury from a street risk was held to arise out of her employment. As in *Bookman,* Staples's employment required the employee's presence on the street. Although a person not so employed could have been injured in the same manner, under the positional-risk test, Staples's employment put him in the position where he was injured. But for the

obligations of his employment, Staples would not have been on the street corner where his injuries occurred. The employment gave rise to a hazard of injury different from what another person would face. Thus, Staples's injuries arose out of his employment because the employment subjected him to an increased risk of injury.

### B. *Course of Employment*

With respect to the course of employment element of the work connection test,

> The course of employment is not confined to the actual manipulation of the tools of the work, nor to the exact hours of work. On the other hand, while admittedly the employment is the cause of the workman's journey between his home and the factory, it is generally taken for granted that workmen's compensation was not intended to protect him against all the perils of that journey. Between these two extremes, a compromise on the subject of going to and from work has been arrived at, largely by case law, with a surprising degree of unanimity: going to and from work is covered *on the employer's premises.*

Larson, § 15.11 (emphasis in original).

The workers' compensation act limits its coverage to injuries an employee suffers

> while engaged in, on, or about the premises where the employee's services require the employee's presence as a part of such service at the time of the injury and during the hours of such service.

Minn.Stat. § 176.011, subd. 16 (1990).

In the present case, Staples's concrete crew worked at a different location every day. We believe it is logical and consistent with the workers' compensation act to define "premises" as the place at which the employee's presence was required by the employer. In this case, the employer's premises was the meeting place at which Staples was injured. The employer required Staples's presence at the meeting place. If Staples had not been at the corner where he was injured, he could not have worked that day.

We do not think it is significant that Staples was injured before his work hours be-

gan. Staples had reported for work, and injuries that occur on the employer's premises and within a reasonable time before the employee's work hours begin are compensable. *See Starrett v. Pier Foundry,* 488 N.W.2d 273, 274 (Minn.1992); Larson, § 16.-42.

## DECISION

When an employee reports to a meeting place designated by the employer, injuries sustained at the meeting place arise out of and in the course of the employee's employment.

**Reversed.**